WILLIAMS CEDAR
By: Christopher Markos, Esquire
PA Id. No. 308997
One South Broad Street
Suite 1510
Philadelphia, PA 19107
P: 215-557-0099
F: 215.557.0673
cmarkos@williamscedar.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ESTATE OF RONALD SINGLETARY,** et al., | : : | Civil Action |
| **Plaintiff,** | : : | No: 19-190 |
| v. | : : | |
| **CITY OF PHILADELPHIA,** et al., | : : : | |
| **Defendants.** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THEIR
UNOPPOSED MOTION TO APPROVE THE ALLOCATION
OF THE SETTLEMENT TO THE SURVIVAL ACTION**

I.  **FACTS**

Ronald Singletary died after he was shot and killed by defendant Officer Schutte, who was in Singletary's home along with defendants Navedo, Schaffer, and Grisham.

Singletary's sisters, Aminah and Latiesha Singletary, opened an Estate and filed this action on January 8, 2019, in their individual capacities and as co-administrators of Ronald's

Estate, pursuant to the Pennsylvania Wrongful Death and Survivor Act, 42 Pa.C.S.§ 8301 et seq.

The parties attended a settlement conference before Magistrate Judge Wells on January 11, 2024. At this conference, the parties reached an agreement, facilitated by Judge Wells, to settle, wherein defendants agreed to pay $135,000, inclusive of attorneys' fees and costs, to resolve all claims.

## II.     LEGAL ARGUMENT

For the following reasons, Plaintiff proposes that the Court approve an allocation of 100% of the net proceeds of the settlement to the survival action.

### a. Applicable Legal Standards

20 Pa.C.S. §3323 requires court approval of any settlement involving claims brought on behalf of or against an estate. *See Schuster v. Reeves*, 589 A.2d 731, 734 (Pa. Super. Ct. 1991) ("The survival action ... was a claim on behalf of the decedent estate, and it could not be settled without court approval. Without such approval the attempt to settle and release the estate's claims was ineffective."); *Moore v. Gates*, 580 A.2d 1138, 1141 (Pa. Super. Ct. 1990) ("Before a survival claim can be settled on behalf of a decedent's estate, ... such a settlement must be judicially approved.").

Court approval of survival actions protects the estate, as well as its creditors and beneficiaries, and "a court may refuse to approve a settlement of a survival action which is inadequate." *Id.* at 1141. "It follows that where wrongful death and survival actions are settled for a single amount, the amount apportioned to the survival action must be approved by a court having jurisdiction." *Moore*, 580 A.2d at 1141.

This Court has jurisdiction to rule on the appropriateness of the parties' proposed settlement agreement under 20 Pa.C.S. §3323(b), which states: "Whenever it is desired to compromise or settle an action in which damages are sought to be recovered on behalf of an estate, any court or division thereof in which such action is pending and which has jurisdiction thereof may ... make an order approving such compromise or settlement." *See also Moore*, *supra*, 580 A.2d at 1141 ("Where a survival action is pending, ... a settlement thereof may be approved by the court in which it is pending....").

20 Pa.C.S. §3323 "contemplates a judicial inquiry into the propriety of a proposed compromise or settlement by the estate, whether or not it is contested, consistent with the court's supervisory jurisdiction over decedents' estates, and an adjudication based thereon." *Krause v. B&O R.R.*, 33 Pa. D. & C.3d 458, 466 (Pa. Ct. Comm. Pl. 1983); *see also Moore*, *supra*, 580 A.2d at 1141 ("[A] court may refuse to approve a settlement of a survival action which is inadequate."). In performing this inquiry, the court must "exercise independent judgment on the whole case," and decide whether the proposed settlement is "fair and reasonable under the circumstances." *Krause*, *supra*, 33 Pa. D. & C.3d at 466 (quotation marks omitted). Because "[t]he court must independently evaluate the proposed settlement petition," the petition must "provide the court with sufficient information on which to base its determination," including "all relevant facts and the reasons why the administrator of the ... estate believes the settlement is desirable and why it is in the estate's best interest to settle the action." *Rodi v. Williams*, 2015 WL 1863006, at *2 (M.D. Pa. Apr. 23, 2015) (quotation marks omitted). "Relevant facts include how many medical bills and liens regarding the care of the deceased ... are to be handled by the settlement." *Id*. Courts also analyze the strengths and weaknesses of the particular case, including whether the plaintiffs face any "issues of proof that could hamstring their efforts to

establish liability" because these issues go to the settlement value of the case. *Tamasy v. Yough Sch. Dist.*, 2019 WL 5864893, at *2 (W.D. Pa. Nov. 8, 2019).

      b.  <u>The Settlement is Overall Adequate, Fair, and Reasonable</u>

Under the unique circumstances of this case, there are no non-adversarial direct witnesses to support Singletary's underlying claims. In order to persuade a jury to either find liability or award more damages than the amount of this settlement relies almost entirely on the cross-examination of the defendants. As is often the case, trial of this case is fundamentally more difficult without any testimony from the decedant.

Litigation of this case has been time-consuming and expensive, having been fully litigated to the point of being trial-ready in the District Court and being further litigated in the Third Circuit. Trial too would have been lengthy and costly, requiring the participation of many witnesses – Plaintiffs intended to subpoena the medical professionals who treated Ronald upon arrival to the hospital – and Aminah Singletary resides in North Carolina. An additional "expense" the court must consider is the emotional expense of this case, and that would be greatly borne by Aminah and Latiesha. *See Romano v. United States,* 2020 WL 7364453, at *3 (E.D. Pa. Dec. 15, 2020). Moreover, trial itself would not necessarily have yielded certainty, as a verdict in favor of Plaintiffs could still be subject to a further appeal on the issue of qualified immunity, as previewed in the appellate history of this case.

Counsel in this matter have represented many victims of excessive force, and tried many of their cases. Applying their collective experience, it is their considered opinion that this case presents significant trial risk as a result of the underlying facts giving rise to it.

The Estate has separately set forth its position on why the settlement is desirable in the attached Declarations.

Given the foregoing complexities and difficulties of trial of this case, Plaintiff submits that the amount of the settlement is fair and reasonable.

  c. <u>Plaintiff's Proposed Apportionment of the Settlement is Reasonable and Adequate</u>

"Survival actions under the Pennsylvania Survival Act, 42 Pa. C.S. § 8302, are brought by the administrator of the estate to benefit the decedent's estate." *Rodi*, *supra*, 2015 WL 1863006, at *1. "Survival action damages compensate the decedent's estate for losses from the tort," and account for "decedent's pain and suffering, loss of gross earning power from the date of injury until death, and probable earning during his life expectancy minus the probable cost of maintaining himself and wrongful death damages." *Smith v. Sandals Resort Int'l, Ltd*., 709 F. Supp. 2d 350, 358 (E.D. Pa. 2010). "Survival action proceeds are divided among the heirs of the decedent." *Id*.

Wrongful death "damages compensate the spouse, children, or parents of decedent for the pecuniary loss," which includes "the value of the services, society, and comfort the relatives would have received from the decedent." *Id*. at 356.

Here, Plaintiffs propose allocating 100% of the settlement proceeds to the survival action. Pennsylvania policy generally "favors wrongful death beneficiaries over estate beneficiaries." *Id.* at 358. Thus, courts have "approved settlements allocating large percentages to the wrongful death action over the survival action." *Id.* [T]there is nothing inherently suspect or improper about a settlement allocation favoring wrongful death beneficiaries." *Tamasy*, *supra*, 2019 WL 5864893, at *2–3 (finding allocation of settlement funds reasonable even though the parties allocated the entire amount to the wrongful death claim); *see also Rodi*, *supra*, 2015 WL 1863006, at *3 (same); *Romano*, *supra*, 2020 WL 7364453, at *4 (E.D. Pa. Dec. 15, 2020) (approving a 40% allocation of the net settlement proceeds to survival). However, since

5

wrongful death beneficiaries are limited only to parents, children, and spouses, there are no eligible wrongful death beneficiaries here, with limited exception. Pursuant to 42 Pa.C.S. § 8301(d), Aminah and Latiesha are eligible to recover "reasonable hospital, nursing, medical, funeral expenses and expenses of administration." Here, however, there were no hospital, nursing, or medical expenses, and Aminah and Latiesha incurred no out of pocket funeral or administration expenses. Declaration of Aminah Singletary, ¶9.

The value of the survival claim was primarily driven by an assessment of Mr. Singletary's pain and suffering from the time of being shot until the time of his death. That death occurred relatively quickly, and any recovery for pain and suffering attendant to his death would be entirely decided by a jury relying on their reasonable inferences based on the information in the record about the nature of Singletary's injury, testimony that he "threw" a knife aside after he collapsed to the ground upon being shot (and was thus conscious), and the short time between the shooting and when he was pronounced dead.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court approve the allocation of 100% of the net settlement proceeds to the survival action.

Respectfully submitted,

WILLIAMS CEDAR

*/s/ CHRSITOPHER MARKOS*
By: Christopher Markos, Esquire
PA Id. No. 308997
Gerald J. Wiliams, Esq.
Beth G. Cole, Esq.
One South Broad Street
Suite 1510
Philadelphia, PA 19107

                    P: 215-557-0099
                    F: 215.557.0673
                    cmarkos@williamscedar.com

*Attorneys for Plaintiff*

Dated: February 15, 2024

## CERTIFICATE OF NON-OPPOSITION

I, Christopher Markos, certify that I have conferred with counsel for defendants, who do not oppose this motion.

                                                    Respectfully submitted,

                                                    WILLIAMS CEDAR
                                                    */s/ Christopher Markos*
                                                    By:  Christopher Markos, Esquire
                                                    One South Broad Street
                                                    Suite 1510
                                                    Philadelphia, PA 19107
                                                    P: 215-557-0099
                                                    F: 215.557.0673
                                                    cmarkos@williamscedar.com
                                                    *Attorney for Plaintiff*

Dated: February 15, 2024

## CERTIFICATE OF SERVICE

    I, Christopher Markos, Esquire, hereby certify that on this date, I served a copy of the foregoing document, via the Court's Electronic Case Filing system, and that it is available for viewing and downloading therefrom by Counsel for defendants.

*/s/ Christopher Markos*

Christopher Markos

Dated: February 15, 2024